UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS N. SMITH,<br><br>              **Plaintiff,**<br><br>  **v.**<br><br>DARRIN SIMMONS, individually<br>and d.b.a. CLEAN AIR PRODUCTS,<br>INC., and DOES 1 through 50<br>inclusive,<br><br>              **Defendants.** | 1:05-CV-01187-OWW-GSA<br><br><br>**MEMORANDUM DECISION AND ORDER<br>RE DENYING IN PART AND<br>GRANTING IN PART DEFENDANTS<br>12(b)(1) and 12(b)(6) MOTION<br>TO DISMISS (DOC. 85)** |

## 1.   INTRODUCTION

Defendant Darrin Simmons ("Simmons") and Defendant Clean Air

Products, Inc., ("Clean Air") move to dismiss Plaintiff Thomas N.

Smith's ("Smith") third amended complaint pursuant to Rule

12(b)(1) of the Federal Rules of Procedure for lack of subject

matter jurisdiction because diversity jurisdiction is absent and

under 12(b)(6) for failure to state a claim for (a) insufficient

facts to support an alter ego claim under breach of contract and

(b) Defendant Simmons, individually, is not a named party in the

contracts.  Oral argument was heard on March 3, 2008.

## 2.   PROCEDURAL BACKGROUND

Plaintiff filed his complaint on September 19, 2005. (Doc.

1, Complaint)  Plaintiff filed a third amended complaint on

October 3, 2007. (Doc, 77, Third Amended Complaint, "TAC")

Defendants filed a motion to dismiss the TAC on October 23, 2007.

(Doc. 85, Motion to Dismiss)   Plaintiff filed their opposition to Defendants' Motion to Dismiss on November 21, 2007. (Doc. 89, Opposition)   Defendants filed their reply to Plaintiff's Opposition on December 3, 2007. (Doc. 92, Reply)

### 3.   FACTUAL BACKGROUND

Plaintiff, *pro se*, filed his Complaint on September 19, 2005 against Defendant Simmons.   The address listed on the Complaint is as follows: "Thomas N. Smith, 581 Bell Road RD7, Te Puhe, New Zealand 3271." (Doc. 1, Complaint, header)   Plaintiff did not allege his place of domicile in the body of the Complaint, nor any state of citizenship.   Defendant Simmons is alleged in the Complaint to be "an unknown corporation doing business in the State of California." (Doc. 1, Complaint, ¶ 1)   Plaintiff filed with his Complaint a declaration stating that he was "a resident of the City of Portland, State of Oregon."   (Doc. 2, Declaration of Thomas Smith, "Thomas Decl.," filed on September 19, 2005, ¶ 6)

Plaintiff filed, his Third Amended Complaint, represented by an attorney, on October 3, 2007 against Defendant Simmons and Defendant Clean Air. (Doc. 77, TAC)   Plaintiff states in his TAC: "Plaintiff is a resident of New Zealand for six months of the year.   At the time of the filing the original complaint and for the other six months of the year, Plaintiff was a citizen of Nevada." (Doc. 77, TAC, ¶ 1)   Defendant Darrin Simmons is alleged to be a resident of Tulare County, California.   Defendant Clean Air is alleged to be a California Corporation, with its principal place of business in Tulare County. (Doc. 77, TAC, ¶¶ 2, 3)   Plaintiff also filed a declaration with his Opposition to

2

Defendants' Motion to Dismiss which states:

> 2. At the time I filed the complaint in this matter, I maintained a residence in New Zealand about six months of the year.  I did not maintain a residence in the United States. I spent some of my time in Nevada, where the Help the Children Foundation I am involved in is headquartered and some time in Oregon.  To the extent I had a residence in the United States at the time the complaint was filed it would have been either Oregon or Nevada.  I considered my principal residence to be New Zealand at the time the complaint was filed.  I did not reside in California at the time and did not consider California to be my domicile.

(Doc. 90, Declaration of Thomas Smith In Opposition to Motion to Dismiss The Third Amended Complaint, "2008 Declaration," ¶ 2) Defendant provides as evidence for this motion, Plaintiff's driver licenses and his U.S. Passport.  Plaintiff's U.S. Passport states his place of birth as California, U.S.A. (*Id.* at ¶ 4) Plaintiff has a California driver's license issued in his name, with an address of 1681 Monte Vista Dr., Vista, California which Plaintiff alleges is the property of a friend, Dave Deal, who has permitted Plaintiff to use his address to maintain a California driver's license. (*Id.* at ¶ 3)  Dave Deal states in his declaration filed as part of Plaintiff's Opposition to Defendants' Motion to Dismiss, that he has known Plaintiff for many years and was asked by Plaintiff if he could use his address to keep his California license and he responded affirmatively. (Doc. 91, Declaration of Dave Deal In Opposition To Motion To Dismiss The Third Amended Complaint, "Deal Decl.", ¶¶ 2, 3)  Mr. Deal also states that Plaintiff does not live in Monte Vista, California home, and never has, except for short periods as a guest. (*Id.* at ¶ 4)  When mail arrives for Plaintiff at Mr. Deal's home in Monte Vista, California, he forwards it to

3

Plaintiff either in New Zealand or Washington state. (*Id.* at ¶ 3)
Plaintiff also maintains a New Zealand driver's license. (Doc.
85, Motion to Dismiss, Exhibit A and Doc. 89, Opposition, p.
3:16-17)

Plaintiff's TAC alleges two causes of action against
Defendants Simmons and Clean Air, breach of contract and common
count. (Doc. 77, TAC)  Plaintiff alleges a written agreement was
entered into on November 23, 1998 between Land O'Goshen, Inc.
("Land O'Goshen"), Defendant Clean Air ("1998 Agreement") and
Defendant Simmons, in his individual capacity. (Doc. 77, TAC,  ¶
9)  Under the terms of the 1998 Agreement, Land O'Goshen sold
inventory at an auction held by Help Smog Parts, including the
800 telephone, the customer database, the operating systems and
various other business property and services. (*Id.*)  Plaintiff
was the sole owner of stock in Land O'Goshen and all rights in
the "agreement" were assigned to Plaintiff once the assets were
sold to Clean Air. (Id., at ¶ 11)

The 1998 Agreement's introductory paragraph states "This
Agreement is between Land O'Goshen, Inc., Seller and Clean Air
Products, Inc., buyer, dated November 23, 1998." (Doc. 77, TAC,
Exhibit 1, p. 1)  The 1998 Agreement was signed by Plaintiff on
the line designated "Thomas N. Smith" and Defendant Simmons
signed on the line designated as "Darrin Simmons." (*Id.* at p. 2)
Defendant Simmons signed his name and added his title "V.P." next
to his signature. (*Id.*)  Plaintiff incorporates by reference the
1998 Agreement into the TAC: "The terms of the agreement are set
forth in Exhibit 1 which is attached and incorporated herein."
(Doc. 77, TAC, ¶ 9)  Plaintiff also alleges that the 1998

**4**

Agreement is "with both Defendants either because the corporation and Simmons are alter egos of one another or because, as the parties intended, Simmons is directly liable as a party." (*Id.*)

A written agreement, an "Agreement and Contract of Sale," dated October, 2001, was entered between Defendant Simmons, as "President of Clean Air Products, Inc." and Plaintiff. ("2001 Agreement"). (*Id.*, Exhibit 2)  Under the terms of the 2001 Agreement, Plaintiff was to prepare a business plan and solicit prospective buyers to be referred to Defendant Simmons to close the deals.  If such a buyer was secured, the sales and proceeds would be divided among "Plaintiff and Clean Air Products, Inc." based upon the terms set forth in the 2001 Agreement.  The 2001 Agreement is signed by Thomas N. Smith on a line designated "Thomas N. Smith" and by Defendant Simmons, on a line designated "Darrin K. Simmons, President, Clean Air Products, Inc. dba Help Smog Parts."  Plaintiff alleges in his TAC that the 2001 Agreement reiterated the obligations in the 1998 Agreement and the purpose was to reiterate the 1998 Agreement with Simmons individually and Defendant Clean Air. (Doc. 77, TAC, ¶ 12) Plaintiff alleges that the "2001 agreement was with both Simmons individually and Defendant Clean Air Products either because they are simply alter egos of one another and because the parties intended that Simmons individually be a party." (*Id.* at ¶ 15)

Plaintiff alleges in his first cause of action that "Defendants" were to pay Land O'Goshen $430,000 in installments as set forth in "Exhibit '1.'" (Doc. 77, TAC, ¶ 10)  Plaintiff alleges Defendants breached the agreements in that Defendants failed to make all the payments required under the agreements

when due. (*Id.* at ¶ 17)   Plaintiff contends he and his
predecessor in interest, Land O'Goshen, performed all required
obligations under the two agreements. (*Id.* at ¶ 16)   Plaintiff
contends that as a "result of the breach of agreement" he has
been damaged in the amount not less than $278,929, plus interest
under the 1998 Agreement and an unknown sum under the 2001
Amendment. (*Id.* at ¶ 18)   Plaintiff prays for judgment of damages
not less than $278,929, interest, costs of suit and for such
other and further relief the Court deems just. (Doc. 77, TAC, p.
5:1-5)

The second claim is a common count that Defendants Clean Air
and Simmons owe Plaintiff the sum of $278,929. (*Id.* at ¶ 22)
Plaintiff alleges Defendants owe him for goods, services and
money sold and delivered within the past four years for which
Defendants agreed to pay a specified sum. (*Id.* at ¶ 20)
Plaintiff contends he has performed as required. (*Id.* at ¶ 21)

#### 4.   STANDARD OF REVIEW

A.   12(b)(1) MOTION

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows
a motion to dismiss for lack of subject matter jurisdiction.   It
is a fundamental precept that federal courts are courts of
limited jurisdiction.   Limits upon federal jurisdiction must not
be disregarded or evaded. *Owen Equipment & Erection Co. v.
Kroger*, 437 U.S. 365, 374 (1978).   The U.S. Constitution, Art.
III, §2 extends federal judicial power to: " . . . Controversies
. . . between Citizens of different States . . . and between a
State, or the Citizens thereof, and foreign States, Citizens or
Subject."

1   "Federal courts have original jurisdiction over all civil

2   actions that 'arise under' the Constitution or laws of the United

3   States." *Wander v. Kaus*, 304 F.3d 856, 858 (9th Cir. 2002)

4   (citing 28 U.S.C. § 1331).[1]  Federal district courts are vested

5   with original jurisdiction over matters in controversy between

6   "citizens of different States." 28 U.S.C. § 1332(a)(1).

7   The determination of a litigant's state citizenship for

8   purposes of section 1332(a)(1) is controlled by federal common

9   law, not by the law of any state. *Kantor v. Wellesley Galleries,*

10  *Ltd.,* 704 F.2d 1088, 1090 (9th Cir. 1983).  "To show state

11  citizenship for diversity purposes under federal common law a

12  party must (1) be a citizen of the United States, and (2) be

13  domiciled in the state." *Id.*  Section 1332-the diversity

14  jurisdiction statute-"speaks of citizenship, not of residency."

15  *Kantor v. Warner-Lambert Co.,* 265 F.3d 853, 857 (9th Cir. 2001).

16  "To be a citizen of a state, a natural person must first be a

17  citizen of the United States." *Id.*  "The natural person's state

18  citizenship is then determined by her state of domicile, not her

19  state of residence." *Id.*

20  The party invoking diversity jurisdiction bears the burden

21  of persuasion with evidence establishing complete diversity.

22  *McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 186-189

23  (1936) ("If his allegations of jurisdictional facts are

24  challenged by his adversary in any appropriate manner, he must

25

26      [1] "Most federal-question jurisdiction cases are those in
    which federal law creates a cause of action." *Wander v. Kaus*, 304

27  F.3d 856, 858 (9th Cir. 2002) (citing *Merrell Dow Pharms. Inc. v.*

28  *Thompson*, 478 U.S. 804, 808 (1986)).

7

support them by competent proof. And where they are not so challenged the court may still insist that the jurisdictional facts be established or the case be dismissed, and for that purpose the court may demand that the party alleging jurisdiction justify his allegations by a preponderance of evidence."); *see also Thomson v. Gaskill*, 315 U.S. 442, 446 (1942) ("Accordingly, if a plaintiff's allegations of jurisdictional facts are challenged by the defendant, the plaintiff bears the burden of supporting the allegations by competent proof."); *Lew v. Moss*, 797 F.2d 747, 749 (9th Cir. 1986) ("[T]he party asserting diversity jurisdiction bears the burden of proof.")

**B.   12(b)(6) MOTION**

Fed. R. Civ. P. 12(b)(6) provides that a motion to dismiss may be made if the plaintiff fails "to state a claim upon which relief can be granted."  However, motions to dismiss under Fed. R. Civ. P. 12(b)(6) are disfavored and rarely granted. *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). In deciding whether to grant a motion to dismiss, the Court "accept[s] all factual allegations of the complaint as true and draw[s] all reasonable inferences" in the light most favorable to the nonmoving party. *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999); *see also Rodriguez v. Panayiotou*, 314 F.3d 979, 983 (9th Cir. 2002).  A court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

The question before the court is not whether the plaintiff will ultimately prevail; rather, it is whether the plaintiff

**8**

could prove any set of facts in support of his claim that would entitle him to relief.  "A complaint should not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Van Buskirk v. CNN, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002) (citations omitted).

Documents attached pursuant to Fed. R. Civ. P. 10(c) will not be considered outside the pleadings which would require converting the motion to a Rule 56 summary judgment motion. Fed. R. Civ. P. 10(c); *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987) ("If a complaint is accompanied by attached documents, the court is not limited by the allegations contained in the complaint."); *see also Voest-Alpine Trading USA Corp. v. Bank of China*, 142 F.3d 887, 891 n.4 (5th Cir. 1998).  "A statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion. A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c).

## 5.  DISCUSSION

### A.   12(b)(1) DIVERSITY JURISDICTION

Defendants move to dismiss Plaintiff's TAC under Federal Rules of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, alleging no diversity of citizenship exists between the parties.  Defendants allege that Plaintiff is "stateless," based on Plaintiff's declaration, including the statement that he did not have a residence in the United States at the time of filing the Complaint.  Defendants also reference Plaintiff renewing his California license on or about October 28, 2005,

9

designating a California address; his New Zealand driver's license; allegations of citizenship in the State of Nevada stated in his Third Amended Complaint; and allegations of residency in Oregon in his initial Complaint.  Defendants also assert that Plaintiff intended to return to New Zealand after the Complaint was filed with an intention to remain there indefinitely and therefore Plaintiff is a "stateless citizen."  28 U.S.C. § 1332, the basic diversity jurisdiction statute provides:

> (a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between--
>> (1) citizens of different States;
>> (2) citizens of a State and citizens or subjects of a foreign state;
>> (3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and
>> (4) a foreign state, defined in section 1603(a) of this title, as plaintiff and citizens of a State or of different States.

28 U.S.C. § 1332.

     In diversity cases, Plaintiff must allege the citizenship of each party.  "In order to be a citizen of a State within the meaning of the diversity statute, a natural person must both be a citizen of the United States and be domiciled within the State." *Newman-Green, Inc.*, 490 U.S. 826, 828 (1989).  "Domicile,... requires *both* physical presence at a given location and an intent to remain there indefinitely..." *Lew v. Moss*, 797 F.2d 747, 752 (9th Cir. 1986)(emphasis added).

     "The existence of federal jurisdiction ordinarily depends on the facts as they exist when the complaint is filed." *Newman-Green, Inc.*, 490 U.S. at 830.  "Diversity must exist at the time the lawsuit is filed. It need not exist earlier, nor

10

must it continue thereafter." Judge William W. Schwarzer, Judge A. Wallace Tashima & James M. Wagstaffe, Federal Civil Procedure Before Trial, § 2:368 (2007); *see also Grupo Dataflux v. Atlas Global Group, L.P.,* 541 U.S. 567, 570-571 (2004) ("This time-of-filing rule is hornbook law (quite literally) taught to first-year law students in any basic course on federal civil procedure.  It measures all challenges to subject-matter jurisdiction premised upon diversity of citizenship against the state of facts that existed at the time of filing-whether the challenge be brought shortly after filing, after the trial, or even for the first time on appeal.")[2]

When a defendant challenges jurisdiction *facially*, all material allegations in the complaint are assumed true, and the question for the court is whether the lack of federal jurisdiction appears from the face of the pleading itself. *See Thornhill Publishing Co. v. General Telephone Electronics*, 594 F.2d 730, 733 (9th Cir. 1979); *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3rd Cir. 1977) ("The facial attack does offer similar safeguards to the plaintiff: the court must consider the allegations of the complaint as true."); *Cervantez v. Sullivan*, 719 F.Supp. 899, 903 (E.D. Cal. 1989), *rev'd on*

---

[2] Plaintiff contends in his declaration filed in support of his Opposition to this motion that he is currently a resident of Washington state.  There is no issue with that contention as the point of review is at the time of filing the complaint.  Any subsequent changes in Plaintiff's citizenship do not alter the fact that if Plaintiff was domiciled in a State other than California at the time of filing the complaint, diversity jurisdiction exists for purposes of the lawsuit complying with diversity jurisdiction.

1   *other*  963 F.2d 229 (9th Cir. 1992) ("The factual allegations of
2   the complaint are presumed to be true, and the motion is granted
3   only if the plaintiff fails to allege an element necessary for
4   subject matter jurisdiction.")

5       A Rule 12(b)(1) jurisdictional attack may also be factual.
6   *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir.2000)(citation
7   omitted); *Thornhill Publishing Co.*, 594 F.2d at 733.  A defendant
8   may attack the existence of subject matter jurisdiction apart
9   from the pleadings. *Mortensen*, 549 F. 2d at 891.  In such a case,
10  the court may rely on evidence extrinsic to the pleadings and
11  resolve factual disputes relating to jurisdiction. *Id.* ("Where
12  the jurisdictional issue is separable from the merits of the
13  case, the judge may consider the evidence presented with respect
14  to the jurisdictional issue and rule on that issue, resolving
15  factual disputes if necessary.")  "No presumptive truthfulness
16  attaches to plaintiff's allegations, and the existence of
17  disputed material facts will not preclude the trial court from
18  evaluating for itself the merits of jurisdictional claims." *Id.*
19  (quoting *Mortensen*, 549 F.2d at 891).  In reviewing a
20  jurisdictional attack, the court must be aware that "the
21  congressional grant of diversity jurisdiction is to be strictly
22  construed." *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088,
23  1092 (9th Cir. 1983).

24      On its face, Plaintiff's TAC properly alleges diversity
25  jurisdiction as the court takes the allegations in the complaint
26  as true.  In a federal action, a complaint must contain "a short
27  and plain statement of the grounds upon which the court's
28  jurisdiction depends." Fed. R. Civ. P. 8(a)(1).  Plaintiff's TAC

alleges that Plaintiff is a resident of New Zealand for approximately six months of the year and at the time the original Complaint was filed, Plaintiff was a citizen of Nevada. (Doc. 77, TAC, ¶ 1)[3]  Defendant Simmons is alleged to be a resident of Tulare County, a county located in the State of California and Defendant Clean Air is alleged to be a California Corporation. (*Id.* at ¶¶ 2, 3)  Even if Plaintiff's motive for moving to Nevada was for jurisdictional purposes, so long as Plaintiff then intended to make Nevada his domicile and established a physical presence with the intent to stay indefinitely and had no

_____

[3] While Plaintiff's original Complaint does not allege of which state he is a citizen nor does he do so in the initial declaration he filed with his original Complaint, Plaintiff does state in his initial declaration that he was a resident of Oregon.  Again, this does not in and of itself establish his domicile but assuming that was his purpose, Plaintiff has the ability to amend a complaint in order to cure defective allegations of jurisdiction. *See* 28 U.S.C. § 1653 ("Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts.")

The Ninth Circuit recently addressed amended pleadings and possible sham pleadings:

At the time a complaint is filed, the parties are often uncertain about the facts and the law; and yet, prompt filing is encouraged and often required by a statute of limitations, laches, the need to preserve evidence and other such concerns. In recognition of these uncertainties, the United States Court of Appeals for the Ninth Circuit does not require complaints to be verified, Fed. R. Civ. P. 11(a), and the court allows pleadings in the alternative--even if the alternatives are mutually exclusive.

*PAE Government Services, Inc. v. MPRI, Inc.*, 2007 U.S. App. LEXIS 29221, at *5, 2007 WL 4394427, at *2 (9th Cir. 2007).

13

intention of moving elsewhere, it is sufficient to establish diversity jurisdiction.   As stated in *Peterson v. Allcity Ins. Co.*, 472 F.2d 71, 74 (2nd Cir. 1972): "So long as she intended to make North Carolina her home at the time she moved there and had no intention then of moving elsewhere, her motive in moving, even if for jurisdictional purposes, is not our concern."

Because Defendants mount a factual attack on subject matter jurisdiction the court must examine the evidence submitted by Defendants.   Defendants submit copies of Plaintiff's California Driver's license, New Zealand driver's license and U.S. Passport. "[I]n a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).[4]   A jurisdictional challenge is a factual attack where it, relies on extrinsic evidence and does "not assert lack of subject matter jurisdiction solely on the basis of the pleadings." *Morrison v. Amway Corp.*, 323 F.3d 920, 925 n.5 (11th Cir. 2003).   "The determination of a party's domicile is a mixed question of law and fact." *Lew v. Moss,* 797 F.2d 747, 750 (9th Cir. 1986).   In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint

---

[4] In *Safe Air*, the Court on review considered the 12(b)(1) motion not as a dismissal for lack of subject matter jurisdiction but rather as a grant of summary judgment on the merits because the question of jurisdiction was dependent on resolution of factual issues going to the merits.   The RCRA statute provided the basis for both the subject matter jurisdiction of the federal court and plaintiff's substantive claim for relief.   373 F.3d at 1039-1040.   The merits of the claim are not at issue in this 12(b)(1) motion.

without converting the motion to dismiss into a motion for summary judgment. *See Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003). "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Id.* "The courts have also stated that domicile is evaluated in terms of 'objective facts,' and that 'statements of intent are entitled to little weight when in conflict with facts.'" *Lew,* 797 F.2d at 750 (citations omitted).

It undisputed that Plaintiff was not domiciled in California when he filed the Complaint. Plaintiff's declaration expressly avers that he "did not reside in California at the time and did not consider California" to be his domicile. (Doc. 90, 2008 Declaration, ¶ 2)  Defendants offer no contrary evidence and do not dispute this fact.[5]  Although he had a California driver's license listing a California address, Plaintiff's and his friend Mr. Deal's declarations clarify that Plaintiff did not live nor did he intend to live in California at the time the Complaint was filed.[6]  Plaintiff's failure to apply for a driver's license in Nevada or Oregon while maintaining and renewing his California license however, does raise a question about his intent to establish his domicile in either of these states, coupled with

---

[5] And this motion does not involve a party changing his domicile.

[6] Plaintiff states he only retains his California Driver's license for convenience because of his extensive travels.

15

Plaintiff's statement in his declaration that he did not maintain a residence in the United States at the time he filed his Complaint.   Defendants argue Plaintiff was "stateless" at the time the Complaint was filed.   "Federal courts are without authority to hear suits having as their jurisdictional basis the alienage of a person who has no nationality." *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1092 (9th Cir. 1983).

Plaintiff offers further in his declaration that to the extent he had a residence, it would have been in Oregon *or* Nevada *but*, also states that he did not maintain a residence in the United States at the time the Complaint was filed. (Doc. 90. 2008 Declaration, ¶ 2)   One cannot be domiciled in two States for purposes of establishing diversity jurisdiction.   Maintaining a place of residence does not in and of itself establish one's domicile; it provides a "prima facie" case of domicile but if challenged more must be provided. *See State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994) ("While there are references in the evidence to Dyer's residence instead of his domicile and citizenship, we feel this is not fatal to jurisdiction. Residence alone is not the equivalent of citizenship, but the place of residence is prima facie the domicile."); *Stine v. Moore*, 213 F.2d 446, 448 (5th Cir. 1954) ("Residence alone is not the equivalent of citizenship, although the place of residence is prima facie the domicile...")   A lack of residence in a State for purposes of establishing a domicile raises question because the result is a U.S. Citizen not domiciled in any State is "stateless" for purposes of § 1332(a)(3) and thus destroys complete diversity. *Newman-Green,*

16

1  *Inc. v. Alfonzo-Larrain,* 490 U.S. 826, 828-829 (1989) ("In order
2  to be a citizen of a State within the meaning of the diversity
3  statute, a natural person must both be a citizen of the United
4  States and be domiciled within the State.")  An American
5  domiciled abroad permanently (not domiciled in the U.S.) is not a
6  "citizen of State" for diversity purposes. Judge William W.
7  Schwarzer, Judge A. Wallace Tashima & James M. Wagstaffe, Federal
8  Civil Procedure Before Trial, § 2:240 (2007).

9      Plaintiff states in his declaration that at the time of
10 filing the Complaint he considered his principal residence to be
11 in New Zealand and he did not maintain a residence in the United
12 States. (Doc. 90, Smith Decl., ¶ 2)  "Residence is physical,
13 whereas domicile is generally a compound of physical presence
14 plus an intention to make a certain definite place one's
15 permanent abode, though, to be sure, domicile often hangs on the
16 slender thread of intent alone, as for instance where one is a
17 wanderer over the earth. Residence is not an immutable condition
18 of domicile." *Weible v. United States*, 244 F.2d 158, 163 (9th
19 Cir. 1957).  A person's domicile is distinct from residency and
20 the diversity statute speaks of citizenship not residency: a
21 person's domicile is determined by that person's "permanent home,
22 where she resides with intention to remain or to which she
23 intends to return." *Kantor v. Warner-Lambert Co.*, 265 F.3d 853,
24 857 (9th Cir. 2001).

25     Plaintiff does not clearly and unequivocally state where he
26 was domiciled at the time the Complaint was filed.  Nor does
27 Plaintiff state where he *intends* to remain permanently for the
28 indefinite future.  Plaintiff seems uncertain whether maintained

17

a residence in the United States, stating at one point he did not maintain a residence in the United States and then stating that it is *either* Nevada or Oregon.  He provides little or no support for his residence claim to either State.  Plaintiff supports his statement that he is a citizen of Nevada, as alleged in his TAC, by stating in his 2008 declaration: "I spent some of my time in Nevada, where the Help the Children Foundation I am involved in is headquartered ... To the extent I had a residence in the United States at the time the complaint was filed it would have been either Oregon or Nevada."  This statement is equivocal as to whether at the time of the filing Plaintiff had a residence within the United States and Plaintiff is unable to state in which U.S. state he resided.

From the 2008 declaration, Plaintiff's TAC, and Plaintiff's initial Complaint, it appears that Plaintiff intends his New Zealand residence to be his indefinite permanent residence.  His initial Complaint filed in 2005 lists a New Zealand address in the header.  His Second Amended Complaint filed July 5, 2006 states that "Plaintiff is a resident of New Zealand for approximately six months of the year.  For the other six months of the year, Plaintiff is a citizen of Nevada." (Doc. 19, Second Amended Complaint, ¶ 1)  In his 2008 declaration filed in opposition to this motion Plaintiff once again states that he resides in New Zealand for six months of the year.  Plaintiff goes so far as to state "I considered my principal residence to be New Zealand at the time the complaint was filed."  Plaintiff also maintains a driver's license in New Zealand.

Plaintiff does not provide a residence address in either

18

Oregon or Nevada, nor where he files taxes, maintains his assets, where he banks, nor where he seeks medical treatment.  The only indication of ties to a state is his involvement with a charity in Nevada and a California driver's license.  Neither is sufficient to establish domicile.  An individual's manifestation of intent to remain in a location is gauged by various objective factors including where the individual resides, is employed, has assets, is registered to vote, seeks medical treatment, has a driver's license, banks, and pays state taxes. *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986)[7]*; see also Altimore v. Mount Mercy Coll.*, 420 F.3d 763, 769 (8th Cir. 2005).  Plaintiff provides no other facts, does not express any intent to remain indefinitely in either Oregon, Nevada, or Washington and an individual cannot be domiciled in two states.

Without other evidence to establish his place of domicile and given his varying accounts of his place of residence without any reference to domicile, nor demonstrating his intent to remain any place indefinitely, Plaintiff's evidence as to his residence is conflicting.  The party invoking diversity jurisdiction bears the burden of persuasion by evidence establishing complete

---

[7] "Courts in other jurisdictions have recognized additional principles relevant to our present analysis. The courts have held that the determination of an individual's domicile involves a number of factors (no single factor controlling), including: current residence, voting registration and voting practices, location of personal and real property, location of brokerage and bank accounts, location of spouse and family, membership in unions and other organizations, place of employment or business, driver's license and automobile registration, and payment of taxes." *Lew,* 797 F.2d at 750.

19

diversity. *McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 186-189 (1936)("If his allegations of jurisdictional facts are challenged by his adversary in any appropriate manner, he must support them by competent proof. And where they are not so challenged the court may still insist that the jurisdictional facts be established or the case be dismissed, and for that purpose the court may demand that the party alleging jurisdiction justify his allegations by a preponderance of evidence."); *see also Thomson v. Gaskill*, 315 U.S. 442,446 (1942) ("Accordingly, if a plaintiff's allegations of jurisdictional facts are challenged by the defendant, the plaintiff bears the burden of supporting the allegations by competent proof."); *Lew v. Moss*, 797 F.2d 747, 749 (9th Cir. 1986) ("Our cases have established several principles to guide this inquiry. First, the party asserting diversity jurisdiction bears the burden of proof.")

Plaintiff's position is muddled.  It appears Plaintiff may have his domicile in New Zealand.  He does not reside in California.  All parties at the hearing acknowledged that it was unclear where in America Plaintiff resides: Oregon, Washington or Nevada.  It appears Plaintiff may be stateless, because he is not a citizen of New Zealand.  Domicile is a coupling of intent and residence.  Domicile can potentially exist without residence when, for example, a student leaves a state of residence to attend school in another state, but for all purposes considers his or her domicile to be his or her original home state because of his or her intention to return there after completing school. Plaintiff possibly could have overcome the diversity jurisdiction attack by stating in his declaration that he was a citizen of

Nevada at the time of filing the Complaint and intended to stay there indefinitely.  Instead, Plaintiff states that he had no residence in the U.S. and then states that "if he had a residence" it would be either Nevada or Oregon.  Plaintiff will be give a final opportunity to amend his complaint.  Defendants' 12(b)(1) motion to dismiss is **GRANTED WITH LEAVE TO AMEND.**

**B.    12(b)(6) ALTER EGO**

Defendants' 12(b)(6) motion as to Plaintiff's first cause of action for breach of contract complains that Plaintiff alleges only a conclusory theory of alter ego liability.  Defendants assert Plaintiff has not alleged any facts to support these conclusory statements nor alleged what "inequitable result will follow" if the acts are treated as those of corporation alone.

To establish an alter ego claim, plaintiff must establish that "(1) there is such a unity of interest and ownership between the corporation and the individual or organization controlling it that their separate personalities no longer exist, and (2) failure to disregard the corporate entity would sanction a fraud or promote injustice." *Robbins v. Blecher,* 52 Cal.App.4th 886, 892, 60 Cal.Rptr.2d 815 (1997)(quoting *Communist Party v. 522 Valencia*, *Inc.,* 35 Cal.App.4th 980, 993, 41 Cal.Rptr.2d 618 (1995)); *see also Mesler v. Bragg Management Co.*, 39 Cal.3d 290, 300-01, 702 P.2d 601 (1985) ("Thus the corporate form will be disregarded only in narrowly defined circumstances and only when the ends of justice so require.")  "Ordinarily, a corporation is regarded as a legal entity separate and distinct from its stockholders, officers and directors.  Under the alter ego doctrine, however, where a corporation is used by an individual

21

or individuals, or by another corporation, to perpetrate fraud, circumvent a statute, or accomplish some other wrongful or inequitable purpose, a court may disregard the corporate entity and treat the corporation's acts as if they were done by the persons actually controlling the corporation." *Id.*

"The conditions under which the corporate entity may be disregarded, or the corporation be regarded as the alter ego of the stockholders, necessarily vary according to the circumstances in each case inasmuch as the doctrine is essentially an equitable one and for that reason is particularly within the province of the trial court. Only general rules may be laid down for guidance." *Stark v. Coker*, 20 Cal.2d 839, 846, 129 P.2d 390 (1942).

Here, Plaintiff alleges in his first cause of action:

> 3. ...Defendant Simmons is the sole owner of the stock of Clean Air Products, Inc. Plaintiff is informed and believes and thereon alleges that Defendant Clean Air Products, Inc. is the alter ego of Defendant Darrin Simmons and that at all times Defendant Simmons drew no distinction between Clean Air Products and himself. Plaintiff is informed and believes and thereon alleges that Defendant Simmons treated Defendant Clean Air Products as if it was not a separate entity. It would be an injustice to adhere to the fiction of the separate corporation as all the actions of Defendants were as one.
> 9. ...The agreement [1998 Agreement] is therefore with both Defendants either because the corporation and Simmons are alter egos of one another or because, as the parties intended Simmons is directly liable as a party.

(Doc. 77, TAC, ¶¶ 3, 9)  Plaintiff also asserts in a later paragraph regarding the 2001 Agreement the same: "The 2001 Agreement was with both Simmons individually and Defendant Clean Air either because they are simply alter egos of one another and because the parties intended that Simmons individually be a

party." (Doc. 77, TAC, ¶ 15)  "While it is the general rule that a corporation is an entity separate and distinct from its stockholders, with separate, distinct liabilities and obligations, nevertheless there is a well-recognized and firmly settled exception to this general rule, that, when necessary to redress fraud, protect the rights of third persons, or prevent a palpable injustice, the law and equity will intervene and cast aside the legal fiction of independent corporate existence, as distinguished from those who hold and own the corporate capital stock, and deal with the corporation and stockholders as identical entities with identical duties and obligations." *Wenban Estate v. Hewlett*, 193 Cal. 675, 696, 227 P.723 (1924).

Plaintiff properly alleges that to recognize Simmons and Clean Air as separate would, under the circumstances promote injustice.  "Conclusory allegations of 'alter ego' status are insufficient to state a claim. Rather, a plaintiff must allege specifically both of the elements of alter ego liability, as well as facts supporting each." *Neilson v. Union Bank of California, NA*, 290 F Supp 2d 1101, 1116 (C.D. Cal. 2003).  Plaintiff then alleges: "at all times Defendant Simmons drew no distinction between Clean Air Products and himself. Plaintiff is informed and believes and thereon alleges that Defendant Simmons treated Defendant Clean Air Products as if it was not a separate entity." (Doc. 77, TAC, ¶ 3)

The Federal Rules of Civil Procedure require only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  This is not a Rule 9 pleading. *See* Fed. R. Civ. P. 9 (special matters regarding

23

1  pleadings).  While, conclusory allegations of alter ego status

2  will not survive a motion to dismiss, *Hokama, v. E.F. Hutton &*

3  *Co., Inc.*, 566 F.Supp. 636, 647 (N.D. Cal. 1983), at the same

4  time alter ego determinations are "highly fact-based, and require

5  considering the totality of the circumstances." *Legacy Wireless*

6  *Services, Inc. v. Human Capital, LLC*, 314 F.Supp.2d 1045, 1058

7  (D.Or. 2004).

8     While Plaintiff has not factually described how Simmons

9  failed to treat the corporation as a distinct entity or what

10 inequity will result from these circumstances (other than how to

11 pay the contract), Defendants are nonetheless clearly on notice

12 of Plaintiff's alter ego claim and can frame a defense.

13 Discovery may show different facts, but Plaintiff has

14 sufficiently alleged an alter ego theory of liability against

15 Defendant Simmons for a breach of contract claim.

16     Defendants 12(b)(6) motion to dismiss the first cause

17 of action as to the alter ego theory of liability is DENIED.

18 C.   EXTRINSIC EVIDENCE PERMITTED WHERE CONTRACT TERM IS DISPUTED

19     Defendants also move under 12(b)(6) as to the breach of

20 contract cause of action on the ground that the attached

21 contracts to the TAC, the 1998 Agreement and 2001 Agreement,

22 based on a reading of the plain language demonstrate that the

23 parties intended that the two contracts were entered into only by

24 Defendant Clean Air and Land O'Goshen and not with Defendant

25 Simmons, individually, as Plaintiff alleges.  Defendants contend

26 that Plaintiff has not provided any factual support, other than

27 the allegation that it was the parties' intent that Defendant

28 Simmons enter into and be bound by the contracts as an

24

individual.

The September 27, 2007 Memorandum Decision and Order Re Granting Defendant Simmons' Judgment on the Pleadings on Plaintiff's Second Amended Complaint, concluded that based on a review of the four corners of the 1998 Agreement, Defendant Simmons was not a party in his individual capacity to the 1998 Agreement.  (Doc. 72, September Order, p. 8)  The decision also held that Plaintiff did not allege any theory of alternate liability such as alter ego theory of liability or other form of personal liability. Plaintiff in his Third Amended Complaint, claims Defendant Simmons is liable in his personal capacity under the 1998 Agreement and 2001 Agreement on the basis of alter ego theory, which this Court addressed above, and/or on the basis that the "parties intended" that Defendant Simmons was to be a party to the two contracts.  Plaintiff claims in his TAC:

> 9. ...The agreement [1998 Agreement] is therefore with both Defendants either because the corporation and Simmons are alter egos of one another or because, as the *parties intended* Simmons is directly liable as a party.
>
> The 2001 Agreement was with both Simmons individually and Defendant Clean Air Products either because they are simply alter egos of one another and because the *parties intended* that Simmons individually be a party.

(Doc. 77, TAC, ¶¶ 9, 15)(emphasis added).

Plaintiff argues in his Opposition to Defendants' Motion to Dismiss the following alleged ambiguity in the two contracts:

> The 1998 agreement attached to the TAC is signed by "Darrin Simmons" and not by Clean Air Products, Inc. While it appears that Simmons signed it as a "VP," the signature line identifies the signing party as "Darrin Simmons." The allegation in the complaint is that, based on that signature and the agreements between the parties, the Defendants, both Clean Air Products and Simmons, entered into the agreement and that it was the

> parties' intent that Simmons be personally liable.
>           The second agreement recites that it is between
> "Darrin K. Simmons, President, Clean Air Products, Inc.
> and Thomas N. Smith." It goes on to state that Smith
> would undertake certain actions and refer people to
> "Simmons." The third point in the agreement states that
> this agreement "does not affect any previous Sales
> Agreements or Contracts between Smith, Simmons, Land
> O'Goshen, Inc or Clean Air Products." The second
> agreement appears to be signed by Simmons as
> "President."
> ---
> At a bare minimum, the agreements are ambiguous as to
> the intent of the
> parties as to who is actually a party thereto.

(Doc. 89, Opposition, pp. 5:11-22, 6:1-2)

Generally, the parties' intent is revealed by nature and character of the agreement. "The words used in an agreement are a primary source from which to glean the parties' intent." *Armstrong Petroleum Corp. v. Tri-Valley Oil & Gas,* 116 Cal.App.4th 1375, 1389, 11 Cal.Rptr.3d 412 (2004).

However, under California's liberal parol evidence rule, because the parties dispute the meaning of the words in the 1998 Agreement and 2001 Agreement, extrinsic evidence must be referenced to show whether the 1998 Agreement and 2001 Agreement are reasonably susceptible to a particular meaning, despite what appears to be clear and unambiguous on the face of the agreements that the contract is between Land O'Goshen and Clean Air only.

"Where the meaning of the words used in a contract is disputed, the trial court must provisionally receive any proffered extrinsic evidence which is relevant to show whether the contract is reasonably susceptible of a particular meaning. [Citations.]  Indeed, it is reversible error for a trial court to refuse to consider such extrinsic evidence on the basis of the trial court's own conclusion that the language of the contract

26

appears to be clear and unambiguous on its face.  Even if a contract appears unambiguous on its face, a latent ambiguity may be exposed by extrinsic evidence which reveals more than one possible meaning to which the language of the contract is yet reasonably susceptible." *Morey v. Vannucci,* 64 Cal.App.4th 904, 912, 75 Cal.Rptr.2d 573 (1998); *see also Davidson v Welch*, 270 Cal App 2d 220, 75 Cal Rptr 676 (1969) (In order to determine initially whether the terms of *any written instrument* are clear, definite, and free from ambiguity, the court must examine the instrument in the light of the circumstances surrounding its execution so as to ascertain what the parties meant by the words used, and only then can it be determined whether the seemingly clear language of the instrument is in fact ambiguous).  Here, the potential ambiguity is created by the form of the written signatures of Simmons.

Defendants motion to dismiss Plaintiff's first cause of action for breach of contract as to Defendant Simmons is DENIED.

D.   12(b)(6) COMMON COUNT

Defendants claim under 12(b)(6) that Plaintiff's second cause of action for common count fails against Defendant Simmons because the 1998 Agreement and 2001 Agreement was entered into between Land O'Goshen and Clean Air only and Plaintiff cannot establish that Defendant Simmons is under any contractual obligation to perform under the terms of the 1998 Agreement and 2001 Agreement.

Under California law, which recognizes common counts, "[a] common count is proper whenever the plaintiff claims a sum of money due, either as an indebtedness in a sum certain, or for the

reasonable value of services, goods, etc., furnished.  It makes
no difference in such a case that the proof shows the original
transaction to be an express contract, a contract implied in
fact, or a quasi-contract." *Kawasho Internat., U.S.A. Inc. v.
Lakewood Pipe Service, Inc.*, 152 Cal.App.3d 785, 793, 201
Cal.Rptr. 640 (1983)(quoting 3 Witkin, California Procedure, 2d
edition, p. 2085, Pleading § 423.)  "The only essential
allegations of a common count are '(1) the statement of
indebtedness in a certain sum, (2) the consideration, i.e., goods
sold, work done, etc., and (3) nonpayment.'" *Farmers Ins.
Exchange v. Zerin*, 53 Cal.App.4th 445, 460 (1997)(quoting 4
Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 508, p. 543*);
see also Miniace v. Pacific Maritime Ass'n*, 424 F.Supp.2d 1168,
1186 (N.D. Cal. 2006).

    For an express contract that is no longer executory, a
common count pleading is appropriate when the only remaining
obligation is the payment of money by defendant. *Ferro v.
Citizens Nat. Trust & Sav. Bank*, 44 Cal.2d 401, 409, 282 P.2d 849
(1955); *McBride v. Boughton*, 123 Cal.App.4th 379, 394-395, 20
Cal.Rptr.3d 115 (2004).  However, "[a] common count is not a
specific cause of action...rather, it is a simplified form of
pleading normally used to aver the existence of various forms of
monetary indebtedness, including that arising from an alleged
duty to make restitution under an assumpsit theory." *McBride*, 123
Cal.App.4th at 394.

    Plaintiff's asserts a cause of action for common count,
incorporating the breach of contract cause action, alleging that
Plaintiff has performed as required but Defendants have failed to

28

pay the sum due of $278,929 for goods, services and money delivered despite demands for which Defendants agreed to pay. (Doc. 77, TAC, ¶¶ 20-22)  Plaintiff has the ability to recover for a breach of contract under his first cause of action for breach of contract.   There is no need for the additional common count cause of action.  If the contracts are not enforceable after a breach, there is no other basis on which Defendants owe money to Plaintiff.

Defendants' motion to dismiss the second cause of action for common count as to Defendant Simmons and all Defendants is GRANTED.

### CONCLUSION

For the reasons set forth above, Defendants motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) is GRANTED with leave to amend twenty (20) days from the date of service of this decision by the clerk of the court.  Defendant's motion to dismiss Plaintiff first cause of action for breach of contract pursuant to Fed. R. Civ. P. 12(b)(6) as to Defendant Simmons only is DENIED.  Defendant's motion to dismiss Plaintiff second cause of action alleging a common count as to Defendant Simmons and all Defendants pursuant to Fed. R. Civ. P. 12(b)(6) is GRANTED.

IT IS SO ORDERED.

Dated:    March 14, 2008           /s/ Oliver W. Wanger
                                 UNITED STATES DISTRICT JUDGE

**29**