1    **DRAFT AS OF JUNE 1, 2009**
     **RETURN TO KEVIN**
2

3    **HEARING DATE: 6/15/09**

4

5

6                    **UNITED STATES DISTRICT COURT**

                     **EASTERN DISTRICT OF CALIFORNIA**
7

8

9    THOMAS N. SMITH,                  1:05-CV-01187-OWW

10                  Plaintiff,         **MEMORANDUM DECISION RE**
                                       **DEFENDANTS DARRIN SIMMONS AND**
11                                     **CLEAN AIR PRODUCTS, INC.'S**
          v.                           **MOTION FOR LEAVE TO AMEND**
12                                     **(Doc. 108)**

13   DARRIN SIMMONS, *et al.,*

14

15                  Defendants.

16
                          **I. INTRODUCTION.**
17

18        This matter is before the court on Plaintiff's motion to

19   modify the pretrial scheduling order, pursuant to Federal Rule of

     Civil Procedure 16(b),[1] and to amend his complaint pursuant to Rule
20
     15.  Defendants Darrin Simmons ("Simmons") and Clean Air Products,
21
     Inc. ("Clean Air") oppose the motion.  The following background
22
     facts are taken from the pleadings and other documents on file in
23
     this case.
24

25

26   _____

27        [1] The prior pretrial scheduling orders in this case provided
     that "[t]he parties do not anticipate filing any amendments to
28   the pleadings at this time."  (Docs. 31 & 104.)

                                    **1**

## II. **FACTUAL BACKGROUND**.

This action was filed on September 19, 2005, by Plaintiff Thomas N. Smith, a resident of New Zealand, against Defendants Simmons, an individual residing in Tulare County, and Clean Air, a California corporation with its principal place of business in Tulare County.

Plaintiff is the sole owner of Land O'Goshen, Inc., which allegedly entered into a series of written contracts with Defendants to sell the assets of "Help Smog Parts," a business operating out of Visalia, California. Specifically, Plaintiff alleges that under the terms of a November 23, 1998 Agreement (the "1998 Agreement"), Land O'Goshen sold inventory from an auction held by Help Smog Parts, including the 800 telephone, the customer database, the operating systems and various other business property and services. Plaintiff alleges that Defendants performed under the contract for five years, only to cease making payments in 2003.

Plaintiff alleges that the parties entered into a second written agreement in 2001. The 2001 agreement allegedly outlined the obligations of the 1998 agreement and provided certain benefits to Plaintiff for preparing a business plan and soliciting buyers on behalf of Defendants. Specifically, Plaintiff would receive 50 cents for every $1.00 of referral business in excess of $500,000. Plaintiff alleges that he referred substantial business to Defendants, but was never compensated.

As a result of the Defendants' alleged conduct, Plaintiff seeks $278,929.00 plus interest under the 1998 agreement and an unknown sum under the 2001 agreement. Plaintiff claims that Defendants Simmons and Clean Air are parties to each contract,

**2**

i.e., that Simmons is personally liable and damages are not limited to Clean Air's corporate form.

### III. <u>PROCEDURAL BACKGROUND</u>.

The litigation in this case, albeit extended, has been thorough.  In the original complaint, Plaintiff, appearing pro per, brought several causes of action related to Land O'Goshen's sale of certain assets to Defendants pursuant to several written contracts.[2] (Doc. 1.)  Defendant Simmons filed a motion to dismiss for lack of subject matter jurisdiction and failure to state a claim.  (Doc. 8, Motion to Dismiss I.)

On February 9, 2006, Plaintiff filed his first amended complaint, again seeking damages for breach of the 1998 and 2001 written contracts.  (Doc. 11, First Amended Complaint ("FAC").) On April 3, 2006, Defendant Simmons again filed a motion to dismiss for lack of subject matter jurisdiction and failure to state a claim.  (Doc. 15, Motion to Dismiss II.)  On June 19, 2006, Plaintiff was granted leave to file an amended complaint.  (Doc. 18.)

On July 5, 2006, Plaintiff, now represented by counsel, filed a second amended complaint alleging breach of contract and fraud.[3] (Doc. 19, Second Amended Complaint ("SAC").)  Plaintiff's claims were based on the 1998 and 2001 written contracts.  (Id.)  On July 25, 2006, Defendants moved to dismiss Plaintiff's third cause of

---

[2] Clean Air was not named as a party in the original complaint.

[3] Plaintiff retained his current counsel in March 2006. (D. Gilmore Decl. ¶ 2.)

**3**

action for fraud.  (Doc. 20.)  On September 15, 2006, Defendants' motion was granted with prejudice.  (Doc. 24.)  On October 4, 2006, Defendants filed an answer to Plaintiff's second amended complaint. (Doc. 26.)

On January 4, 2007, David Gilmore, counsel for Plaintiff, and Ron Statler, counsel for Defendant Simmons, attended a scheduling conference.  A Scheduling Conference Order was issued on January 10, 2007 and stated, in pertinent part, that "[t]he parties do not anticipate filing any amendments to the pleadings at this time." (Doc. 31.)   The January 10, 2007 Scheduling Conference Order provided a discovery cutoff of October 5, 2007, a non-dispositive motion deadline of October 19, 2007, and a dispositive motion deadline of November 5, 2007.

On July 6, 2007, Defendant Darrin Simmons filed a motion for judgment on the pleadings.  (Doc. 42.)  Defendant's motion was granted on September 25, 2007, although Plaintiff was permitted leave to amend.  (Doc. 73.)

On October 10, 2007, Plaintiff filed a third amended complaint against Defendant Simmons and Defendant Clean Air for breach of the 1998 and 2001 written contracts.[4]   (Doc. 77, Third Amended Complaint ("TAC").)  On October 23, 2007, Defendant Darrin Simmons filed a motion to dismiss pursuant to Rules 12(b)(1) and (12(b)(6). (Doc. 85, Motion to Dismiss III.)  Defendant's motion was granted, in part, on March 18, 2007, although Plaintiff was again permitted

---

[4] Defendant Clean Air Products, Inc. was not a named Defendant prior to Plaintiff's TAC.  Plaintiff's previous iterations listed "Darrin Simmons, dba Clean Air Products, Inc." as the sole Defendant.

**4**

1  leave to amend.[5]  (Doc. 97.)

2       On April 3, 2008, Plaintiff filed a fourth amended complaint,
3  bringing his claims pursuant to the 1998 and 2001 written
4  contracts.  (Doc. 98, Fourth Amended Complaint ("4thAC").)  On
5  April 23, 2008, Defendants filed an answer to Plaintiff's fourth
6  amended complaint.  (Doc. 101.)

7       On June 4, 2008, David Gilmore, counsel for Plaintiff, and
8  Leonard Herr, counsel for Defendants, attended a subsequent
9  scheduling conference.  A Scheduling Conference Order was issued on
10 June 5, 2008 and stated, in pertinent part, that "[t]he parties do
11 not anticipate filing any amendments to the pleadings at this
12 time." (Doc. 104.)  The June 5, 2008 Scheduling Conference Order
13 provided a discovery cutoff of March 6, 2009, a non-dispositive
14 motion deadline of March 31, 2009, and a dispositive motion
15 deadline of April 1, 2009.[6]

16      On March 31, 2009, Plaintiff filed a motion for leave to file
17 a fifth amended complaint.  (Doc. 108.)  Plaintiff argues that
18 leave should be granted because: (1) the "general rule under Rule
19 15(a)(2) is that relief should be freely given"; and (2) he is
20 entitled to file an amended complaint to comply with Rule 11's safe
21 harbor provisions.

22      On April 1, 2009, Defendants filed a motion for sanctions
23 pursuant to Rule 11.  (Doc. 112.)  Defendants' motion for sanctions

24
25      [5] Plaintiff's motion under 12b6 was denied and dismiss
   second cause of action was granted.
26
27      [6] David Gilmore, counsel for Plaintiff, and Leonard Herr,
   counsel for Defendants, attended the second scheduling
28 conference.

challenges Plaintiff's February 9, 2009 deposition testimony where he admitted that the purpose of the November 1998 contract was to defraud creditors. Defendants argue that Plaintiff is subject to Rule 11 sanctions because he initiated and maintained the present lawsuit with full knowledge of the 1998 contract's illegality.

Defendants also filed a motion for summary judgment or, in the alternative, summary adjudication on April 1, 2009. (Doc 114.)

On May 21, 2009, Defendants filed an opposition to Plaintiff's motion to file a fifth amended complaint. (Doc. 130.) Defendants argue that an amendment at this late stage is highly prejudicial, violates Rule 15 of the Federal Rules of Civil Procedure, and was made purely to avoid disposition of Defendants' motion for summary judgment.

A.  <u>Proposed Fifth Amended Complaint</u>

In his proposed fifth amended complaint, Plaintiff alleges that he and Defendant Simmons entered into an oral agreement on July 1, 1998. (Proposed Fifth Amended Complaint "PFAC", ¶ 9.) Pursuant to the oral agreement, Plaintiff alleges that Simmons would pay $430,000 for the assets of "Help Smog Parts." (*Id*.) According to Plaintiff, the parties memorialized the July 1, 1998 agreement in a single, handwritten agreement, which Smith used to establish banking relationships in New Zealand. (*Id*.)

Plaintiff alleges that in November 1998, Simmons informed him of a pending lawsuit against Help Smog Parts and was concerned that creditors of Help Smog Parts were looking to Simmons to satisfy its liabilities. (*Id*. ¶ 10.) Although Simmons did not assume any liabilities pursuant to the July 1998 oral agreement, he requested

1  that Plaintiff sign a document that provided more detail about the

2  asset purchase. (*Id.*) Simmons drafted the document and presented

3  it to Plaintiff. (*Id.*) Plaintiff claims that he did not

4  understand any of the material terms. (*Id.*)

5      Plaintiff and Defendants signed the written agreement on

6  November 23, 1998.[7] (*Id.*) Plaintiff contends that he signed it to

7  accommodate Simmons with Help Smog creditors and did not intend on

8  altering the material terms of the purchase. (*Id.*)

9      Plaintiff's next asserts that the November 1998 agreement is

10 an accurate statement of the parties' intentions, except for the

11 provisions making Clean Air the sole obligor. (*Id.* ¶ 11.)

12 Plaintiff reiterates that he has consistently alleged that Simmons

13 is personally liable along with Clear Air. (*Id.*)

14

15                    **IV.   LEGAL STANDARD**

16     Once the court has entered a pretrial scheduling order

17 pursuant to Rule 16, the standards of Rule 16 rather than Rule 15

18 govern amendment of the pleadings. *See Johnson v. Mammoth

19 Recreations, Inc.*, 975 F.2d 604, 607-08 (9th Cir. 1992); *Eckert

20 Cold Storage, Inc. v. Behl*, 943 F. Supp. 1230, 1232-33 (E.D. Cal.

21 1996).[8] Orders entered before the final pretrial conference may be

22

23     [7] Plaintiff attaches the November 1998 agreement to the
   proposed fifth amended complaint as "Exhibit 1."
24

25     [8] To rely solely on Rule 15 after a pretrial scheduling
   order has been entered would "render scheduling orders
26 meaningless and effectively would read Rule 16(b) and its good
   cause requirement out of the Federal Rules of Civil Procedure."
27 *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir.
   1998); *see also Mammoth Recreations*, 975 F.2d at 610 (adopting
28 Rule 15's standards for amending the complaint would "undermine

                          **7**

1 modified only "for good cause."  Fed. R. Civ. P. 16(b).

2      The good cause requirement of Rule 16 primarily considers the
3 diligence of the party seeking the amendment.   The pretrial
4 scheduling order can only be modified "if it cannot reasonably be
5 met despite the diligence of the party seeking the extension."
6 *Mammoth Recreations*, 975 F.2d at 609.  When evaluating whether a
7 party was diligent, the Ninth Circuit has determined that "the
8 focus of the inquiry is upon the moving party's reasons for
9 modification.  If that party was not diligent, the inquiry should
10 end." *Id.* at 610; *see also Gestetner*, 108 F.R.D. at 141.

11      When the proposed modification is an amendment to the
12 pleadings, the moving party may establish good cause by showing
13 "(1) that [he or she] was diligent in assisting the court in
14 creating a workable Rule 16 order; (2) that [his or her]
15 noncompliance with a rule 16 deadline occurred or will occur,
16 notwithstanding [his or her] diligent efforts to comply, because of
17 the development of matters which could not have been reasonably
18 foreseen or anticipated at the time of the Rule 16 scheduling
19 conference; and (3) that [he or she] was diligent in seeking
20 amendment of the Rule 16 order, once it became apparent that [he or
21 she] could not comply with the order." *Jackson v. Laureate, Inc.*,
22 186 F.R.D. 605, 608 (E.D. Cal. 1999)(citations omitted).

23      Only after the moving party has demonstrated diligence under
24 Rule 16 does the court apply the standard under Rule 15 to

25

26 the court's ability to control its docket, disrupt the agreed-
upon course of the litigation, and reward the indolent and the
27 cavalier"); *Eckert Cold Storage*, 943 F. Supp. at 1232 n.3.

28

**8**

determine whether the amendment was proper. *See Mammoth Recreations*, 975 F.2d at 608; *Eckert Cold Storage*, 943 F. Supp. at 1232 n.3. Pursuant to Rule 15(a), "leave [to amend] is to be freely given when justice so requires." "[L]eave to amend should be granted unless amendment would cause prejudice to the opposing party, is sought in bad faith, is futile, or creates undue delay." *Martinez v. Newport Beach*, 125 F.3d 777, 785 (9th Cir. 1997).

It is generally our policy to "permit amendment with 'extreme liberality,' although when a district court has already granted a plaintiff leave to amend, its discretion in deciding subsequent motions to amend is 'particularly broad.'" *See Chodos v. West Publishing Co., Inc.,* 292 F.3d 942, 1003 (9th Cir. 2002) (citing *Griggs v. Pace Am. Group, Inc.*, 170 F.3d 877, 879 (9th Cir. 1999)).

## V.   DISCUSSION

Plaintiff contends that he is entitled to file an amended complaint to comply with Rule 11's safe harbor provisions, which were triggered by Defendants' motion for sanctions.

Rule 11's safe harbor provisions give an attorney the opportunity to withdraw or correct a challenged filing by requiring a party filing a Rule 11 motion to serve the motion 21 days before filing the motion. Fed. R. Civ. P. 11(c)(1)(A). Rule 11 states that "a motion for sanctions ... shall not be filed with or presented to the court unless, within 21 days after service of the motion ... the challenged paper ... is not withdrawn or appropriately corrected." Fed. R. Civ. P. 11(c)(1)(A). The "purpose of the safe harbor ... is to give the offending party the opportunity, within 21 days after service of the motion for

sanctions, to withdraw the offending pleading and thereby escape sanctions." *Retail Flooring Dealers of Am., Inc. v. Beaulieu of Am., LLC*, 339 F.3d 1146, (9th Cir. 2003).

Plaintiff asserts that because the fifth amended "seeks to correct the allegedly violative pleading," the court is "required" to grant him leave. (Pl.'s Mot. 2:15-2:16, 3:3-3:4.)  In essence, Plaintiff contends that Rule 11's safe harbor allows him unfettered access to the amendment process.   Although Rule 11 allows the non-moving party to withdraw or appropriately correct the challenged document, it does not create an unflinching mandate to file complaints unrelated to the motion for sanctions.[9]  Rather, the normal method to appropriately correct the Rule 11 violation is to "withdraw the position or to acknowledge candidly that it does not currently have evidence to support a specified allegation.*" Barber*

---

[9] The purpose of the amendments is made abundantly clear by the Advisory Committee Notes:

> These provisions are intended to provide a type of "safe harbor" against motions under Rule 11 in that a party will not be subject to sanctions on the basis of another party's motion unless, after receiving the motion, it refused to withdraw that position or to acknowledge candidly that it does not currently have evidence to support a specified allegation. Under the former rule, parties were sometimes reluctant to abandon a questionable contention lest that be viewed as evidence of a violation of Rule 11; under the revision, the timely withdrawal of a contention will protect a party against a motion for sanctions.

Fed. R. Civ. P. 11; Adv. Comm. Notes, 1993 Amend.

Consistent with Rule 11, Plaintiff's PFAC will be analyzed pursuant to Defendants' motion for sanctions.

**10**

1  *v. Miller*, 146 F.3d 707, 710 (9th Cir. 1998).  Plaintiff's proposed
2  fifth amended complaint does neither.

3       Here,  Defendants'  motion  for  sanctions  is  premised  on
4  Plaintiff's recent deposition testimony that the purpose of the
5  November 1998 contract was to defraud creditors. (Defs.' Mot. for
6  Sanctions [Docket #112], filed April 1, 2009, at 2.)  Plaintiff's
7  proposed fifth amended complaint fails to withdraw or correct the
8  offending material, instead introducing allegations of a July 1998
9  oral  contract  between  the  parties.[10]   Such  an  expansion  of  the
10 pleadings - without directly addressing the challenged conduct - is
11 an  inappropriate  use  of  the  safe  harbor  provisions  and  does  not
12 "appropriately correct" the pleading.  The safe harbor provisions
13 exist to "give the offending party the opportunity to withdraw the
14 offending pleading and thereby escape sanctions." *Miller*, 146 F.3d
15 at 710.  It does not give the party authority to re-engineer their
16 complaint to survive a dispositive motion.  Plaintiff's recasting
17 of Rule 11 does not provide the good cause needed to withstand Rule
18 16.

19      Plaintiff  further  argues  that  good  cause  exists  for  an
20 amendment because the November 1998 agreement does not accurately
21 reflect the transaction between the parties.  Plaintiff now asserts
22 that the parties reached an oral agreement on July 1, 1998, and
23 this  oral  agreement  is  controlling.   (Gilmore  Decl.  ¶  4.)
24 Plaintiff's counsel states he first realized that the November 1998

25

26       [10] Plaintiff contends that his allegations of an oral
    agreement are consistent with his prior complaints in that "Smith
27  has always contended that the deal between the parties bound
    Simmons individually rather than just Clean Air." (Pl.'s Mem. of
28  P & A, pg. 1.)

document was not a completely accurate statement of the parties' understanding following Plaintiff's deposition on February 9, 2009.[11]   (Id. ¶ 5.)   Defendants contend that Plaintiff has not demonstrated the requisite diligence under Rule 16 because he was aware of the information giving rise to this claim at least three years prior to his deposition.

The allegations in Plaintiff's first, second, third, and fourth amended complaints demonstrate that he was aware of the general underlying facts giving rise to an oral contract claim before he filed this motion.   Plaintiff admits that the "basics of the transaction are accurately stated in the November 1998 document" and previous complaints "have always set forth the correct terms of the agreement as to what was transferred and what is due."   (Smith Decl. ¶ 6, 9.)   Plaintiff's story is further belied by his own admission that he used "copies of the [July 1, 1998] handwritten agreement to show to banks in New Zealand to open accounts and obtain loans to acquire real estate."[12]   (Smith Decl. ¶ 3-4.)

The following excerpt from the November 1998 written agreement, casts additional uncertainty onto Plaintiff's claims of

---

[11]   At the same time, Plaintiff contends that his allegations of an oral agreement are consistent with his prior complaints in that "Smith has always contended that the deal between the parties bound Simmons individually rather than just Clean Air."   (Pl.'s Mem. of P & A, pg. 1.)

[12]   Unfortunately, Plaintiff did not retain any copies of this alleged agreement.   (Smith Decl. ¶ 4.)

**12**

ignorance:[13]

> 1.   The contract signed July 1, 1998, between Land O'Goshen, Inc., and Clean Air Products, Inc., becomes null and void, and is superceded by this Contract.
>
> 2.   The contract signed July 1, 1998, between Thomas N. Smith, and Clean Air Products, Inc., becomes null and void, and is superceded by this contract.
>
> 3.   This contract shall be inclusive of all assets, inventory, names, numbers, and good will of Land O'Goshen, Inc., including the aforementioned 800 telephone number, data base operating system and dba "HELP SMOG PARTS" together with the Toyota Forklift serial # 4U-3FGEZU, and 440 Feet of the 8" high pallet racks that were owned by Thomas N. Smith as of July 1, 1998, for the sum of $430,000.

(See Exhibit 1, attached to FAC, SAC, TAC, and 4thAC.)

Accordingly, Plaintiff had notice of potential claims relating to the alleged oral contract reached on July 1, 1998 prior to the filing of the lawsuit.  At the very least, Plaintiff had notice of the general underlying facts at the time he filed his fourth amended complaint on April 3, 2008.[14]  Now, one year later and after discovery has closed, Plaintiff seeks to amend his complaint to introduce allegations stemming from an oral agreement that allegedly took place in 1998.  Such delay does not constitute requisite diligence sufficient to satisfy Rule 16 good cause.

---

[13] Plaintiff admits drafting the November 23, 1998 Agreement.  (T. Smith Dep. 62:16-62:22.)

[14] Plaintiff has filed three amended complaints since retaining counsel in March of 2006: (1) the second amended complaint, filed on July 5, 2006; (2) third amended complaint, filed on October 3, 2007; and, (3) fourth amended complaint, filed on April 3, 2008.  The November 1998 Agreement was attached to each amended complaint as "Exhibit 1."

1    Moreover, even if Plaintiff had demonstrated good cause, the

2    proposed amendment to the complaint would be prejudicial to

3    Defendants.[15]  *See* Fed. R. Civ. Proc. 15; *Martinez*, 125 F.3d at 785

4    (9th Cir. 1997) ("[L]eave to amend should be granted unless

5    amendment would cause prejudice to the opposing party, is sought in

6    bad faith, is futile, or creates undue delay.").  Factual discovery

7    in this matter has been completed and trial is set for July 21,

8    2009.  Defendants anticipate that if Plaintiff's motion is granted,

9    factual discovery would have to be reopened.  (Defs.' Opp'n to

10   Pl.'s Mot. for Leave to Amend [Docket #130], filed May 21, 2009, at

11   4.)  This likely would cause trial to be postponed or the parties

12   would proceed to trial with little factual discovery regarding this

13   issue.  (*Id*.)  As such, Defendants contend that the prejudice and

14   the delay caused by discovery that would be needed to ameliorate

15   such prejudice is not justified by Plaintiff's unexplained failure

16   to amend his complaint until now.   This argument has merit.

17   Because Plaintiff has not demonstrated good cause to modify

18   the pretrial scheduling order to allow amendment to the complaint,

19   and because the proposed amendment would be prejudicial to

20   Defendants, Plaintiff's motion to amend the complaint is DENIED.

21

22

23

24

---

25   [15]   For the reasons set forth in the discussion of
Plaintiff's diligence in bringing a motion to amend, Plaintiff's
26   delay also raises concerns regarding undue delay.  *See Kaplan v.
Rose*, 49 F.3d 1363, 1370 (9th Cir. 1994) (holding that the
27   district court did not abuse in denying leave to amend where the
"new" facts and theories had been known to the party seeking
28   amendment since the inception of the litigation).

**14**

1        **VI.  <u>CONCLUSION</u>.**

2        For the foregoing reasons:

3        1.  Plaintiff's  motion  for  leave  to  file  a  fifth  amended

4    complaint is DENIED.

5

6    IT IS SO ORDERED.

7    **Dated:    June 19, 2009**                        **/s/ Oliver W. Wanger**
                                                          UNITED STATES DISTRICT JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**15**