UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS N. SMITH,<br><br>            Plaintiff,<br><br>    v.<br><br>DARRIN SIMMONS, *et al.*,<br><br>            Defendants. | 1:05-CV-01187-OWW<br><br>AMENDED DECISION RE PLAINTIFF'S MOTION FOR LEAVE TO AMEND (Doc. 108) |

## I. INTRODUCTION.

This matter is before the court on Plaintiff's motion to modify the pretrial scheduling order, pursuant to Federal Rule of Civil Procedure 16(b),[1] and to amend his complaint pursuant to Rule 15. Defendants Darrin Simmons ("Simmons") and Clean Air Products, Inc. ("Clean Air") oppose the motion. The following background facts are taken from the pleadings and other documents on file in this case.

## II. FACTUAL BACKGROUND.

This action was filed on September 19, 2005, by Plaintiff

---

[1] The prior pretrial scheduling orders in this case provided that "[t]he parties do not anticipate filing any amendments to the pleadings at this time." (Docs. 31 & 104.)

**1**

Thomas N. Smith, a resident of New Zealand, against Defendants Simmons, an individual residing in Tulare County, and Clean Air, a California corporation with its principal place of business in Tulare County.

Plaintiff is the sole owner of Land O'Goshen, Inc., which allegedly entered into a series of written contracts with Defendants to sell the assets of "Help Smog Parts," a business operating out of Visalia, California. Specifically, Plaintiff alleges that under the terms of a November 23, 1998 Agreement (the "1998 Agreement"), Land O'Goshen sold inventory from an auction held by Help Smog Parts, including the 800 telephone, the customer database, the operating systems and various other business property and services. Plaintiff alleges that Defendants performed under the contract for five years, only to cease making payments in 2003.

Plaintiff alleges that the parties entered into a second written agreement in 2001. The 2001 agreement allegedly outlined the obligations of the 1998 agreement and provided certain benefits to Plaintiff for preparing a business plan and soliciting buyers on behalf of Defendants. Specifically, Plaintiff would receive 50 cents for every $1.00 of referral business in excess of $500,000. Plaintiff alleges that he referred substantial business to Defendants, but was never compensated.

As a result of the Defendants' alleged conduct, Plaintiff seeks $278,929.00 plus interest under the 1998 agreement and an unknown sum under the 2001 agreement. Plaintiff claims that Defendants Simmons and Clean Air are parties to each contract, i.e., that Simmons is personally liable and damages are not limited to Clean Air's corporate form.

### III. <u>PROCEDURAL BACKGROUND</u>.

The litigation in this case, albeit extended, has been thorough. In the original complaint, Plaintiff, appearing pro per, brought several causes of action related to Land O'Goshen's sale of certain assets to Defendants pursuant to several written contracts.[2] (Doc. 1.) Defendant Simmons filed a motion to dismiss for lack of subject matter jurisdiction and failure to state a claim. (Doc. 8, Motion to Dismiss I.)

On February 9, 2006, Plaintiff filed his first amended complaint, again seeking damages for breach of the 1998 and 2001 written contracts. (Doc. 11, First Amended Complaint ("FAC").) On April 3, 2006, Defendant Simmons again filed a motion to dismiss for lack of subject matter jurisdiction and failure to state a claim. (Doc. 15, Motion to Dismiss II.) On June 19, 2006, Plaintiff was granted leave to file an amended complaint. (Doc. 18.)

On July 5, 2006, Plaintiff, now represented by counsel, filed a second amended complaint alleging breach of contract and fraud.[3] (Doc. 19, Second Amended Complaint ("SAC").) Plaintiff's claims were based on the 1998 and 2001 written contracts. (Id.) On July 25, 2006, Defendants moved to dismiss Plaintiff's third cause of action for fraud. (Doc. 20.) On September 15, 2006, Defendants' motion was granted with prejudice. (Doc. 24.) On October 4, 2006, Defendants filed an answer to Plaintiff's second amended complaint.

---

[2] Clean Air was not named as a party in the original complaint.

[3] Plaintiff retained his current counsel in March 2006. (D. Gilmore Decl. ¶ 2.)

**3**

(Doc. 26.)

On January 4, 2007, David Gilmore, counsel for Plaintiff, and Ron Statler, counsel for Defendant Simmons, attended a scheduling conference. A Scheduling Conference Order was issued on January 10, 2007 and stated, in pertinent part, that "[t]he parties do not anticipate filing any amendments to the pleadings at this time." (Doc. 31.) The January 10, 2007 Scheduling Conference Order provided a discovery cutoff of October 5, 2007, a non-dispositive motion deadline of October 19, 2007, and a dispositive motion deadline of November 5, 2007.

On July 6, 2007, Defendant Darrin Simmons filed a motion for judgment on the pleadings. (Doc. 42.) Defendant's motion was granted on September 25, 2007, although Plaintiff was permitted leave to amend. (Doc. 73.)

On October 10, 2007, Plaintiff filed a third amended complaint against Defendant Simmons and Defendant Clean Air for breach of the 1998 and 2001 written contracts.[4] (Doc. 77, Third Amended Complaint ("TAC").) On October 23, 2007, Defendant Darrin Simmons filed a motion to dismiss pursuant to Rules 12(b)(1) and (12(b)(6). (Doc. 85, Motion to Dismiss III.) Defendant's motion was granted, in part, on March 18, 2007, although Plaintiff was again permitted leave to amend.[5] (Doc. 97.)

---

[4] Defendant Clean Air Products, Inc. was not a named Defendant prior to Plaintiff's TAC. Plaintiff's previous iterations listed "Darrin Simmons, dba Clean Air Products, Inc." as the sole Defendant.

[5] Plaintiff's motion under 12b6 was denied and dismiss second cause of action was granted.

**4**

On April 3, 2008, Plaintiff filed a fourth amended complaint, bringing his claims pursuant to the 1998 and 2001 written contracts. (Doc. 98, Fourth Amended Complaint ("4thAC").) On April 23, 2008, Defendants filed an answer to Plaintiff's fourth amended complaint. (Doc. 101.)

On June 4, 2008, David Gilmore, counsel for Plaintiff, and Leonard Herr, counsel for Defendants, attended a subsequent scheduling conference. A Scheduling Conference Order was issued on June 5, 2008 and stated, in pertinent part, that "[t]he parties do not anticipate filing any amendments to the pleadings at this time." (Doc. 104.) The June 5, 2008 Scheduling Conference Order provided a discovery cutoff of March 6, 2009, a non-dispositive motion deadline of March 31, 2009, and a dispositive motion deadline of April 1, 2009.[6]

On March 31, 2009, Plaintiff filed a motion for leave to file a fifth amended complaint. (Doc. 108.) Plaintiff argues that leave should be granted because: (1) the "general rule under Rule 15(a)(2) is that relief should be freely given"; and (2) he is entitled to file an amended complaint to comply with Rule 11's safe harbor provisions.

On April 1, 2009, Defendants filed a motion for sanctions pursuant to Rule 11. (Doc. 112.) Defendants' motion for sanctions challenges Plaintiff's February 9, 2009 deposition testimony where he admitted that the purpose of the November 1998 contract was to defraud creditors. Defendants argue that Plaintiff is subject to

---

[6] David Gilmore, counsel for Plaintiff, and Leonard Herr, counsel for Defendants, attended the second scheduling conference.

**5**

1  Rule 11 sanctions because he initiated and maintained the present
2  lawsuit with full knowledge of the 1998 contract's illegality.
3       Defendants also filed a motion for summary judgment or, in the
4  alternative, summary adjudication on April 1, 2009.  (Doc 114.)
5       On May 21, 2009, Defendants filed an opposition to Plaintiff's
6  motion to file a fifth amended complaint.  (Doc. 130.)  Defendants
7  argue that an amendment at this late stage is highly prejudicial,
8  violates Rule 15 of the Federal Rules of Civil Procedure, and was
9  made purely to avoid disposition of Defendants' motion for summary
10 judgment.

12 A.   <u>Proposed Fifth Amended Complaint</u>
13      In his proposed fifth amended complaint, Plaintiff alleges
14 that he and Defendant Simmons entered into an oral agreement on
15 July 1, 1998.  (Proposed Fifth Amended Complaint "PFAC", ¶ 9.)
16 Pursuant to the oral agreement, Plaintiff alleges that Simmons
17 would pay $430,000 for the assets of "Help Smog Parts."  (*Id.*)
18 According to Plaintiff, the parties memorialized the July 1, 1998
19 agreement in a single, handwritten agreement, which Smith used to
20 establish banking relationships in New Zealand.  (*Id.*)
21      Plaintiff alleges that in November 1998, Simmons informed him
22 of a pending lawsuit against Help Smog Parts and was concerned that
23 creditors of Help Smog Parts were looking to Simmons to satisfy its
24 liabilities.  (*Id.* ¶ 10.)  Although Simmons did not assume any
25 liabilities pursuant to the July 1998 oral agreement, he requested
26 that Plaintiff sign a document that provided more detail about the
27 asset purchase.  (*Id.*)  Simmons drafted the document and presented
28 it to Plaintiff.  (*Id.*)  Plaintiff claims that he did not

**6**

understand any of the material terms.  (*Id.*)

Plaintiff and Defendants signed the written agreement on November 23, 1998.[7]  (*Id.*) Plaintiff contends that he signed it to accommodate Simmons with Help Smog creditors and did not intend on altering the material terms of the purchase.  (*Id.*)

Plaintiff's next asserts that the November 1998 agreement is an accurate statement of the parties' intentions, except for the provisions making Clean Air the sole obligor.  (*Id.* ¶ 11.) Plaintiff reiterates that he has consistently alleged that Simmons is personally liable along with Clear Air.  (*Id.*)

## IV.  **LEGAL STANDARD**

Once the court has entered a pretrial scheduling order pursuant to Rule 16, the standards of Rule 16 rather than Rule 15 govern amendment of the pleadings.  *See Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607-08 (9th Cir. 1992); *Eckert Cold Storage, Inc. v. Behl*, 943 F. Supp. 1230, 1232-33 (E.D. Cal. 1996).[8]  Orders entered before the final pretrial conference may be

---

[7] Plaintiff attaches the November 1998 agreement to the proposed fifth amended complaint as "Exhibit 1."

[8] To rely solely on Rule 15 after a pretrial scheduling order has been entered would "render scheduling orders meaningless and effectively would read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure." *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998); *see also Mammoth Recreations*, 975 F.2d at 610 (adopting Rule 15's standards for amending the complaint would "undermine the court's ability to control its docket, disrupt the agreed-upon course of the litigation, and reward the indolent and the cavalier"); *Eckert Cold Storage*, 943 F. Supp. at 1232 n.3.

modified only "for good cause." Fed. R. Civ. P. 16(b).

The good cause requirement of Rule 16 primarily considers the diligence of the party seeking the amendment. The pretrial scheduling order can only be modified "if it cannot reasonably be met despite the diligence of the party seeking the extension." *Mammoth Recreations*, 975 F.2d at 609. When evaluating whether a party was diligent, the Ninth Circuit has determined that "the focus of the inquiry is upon the moving party's reasons for modification. If that party was not diligent, the inquiry should end." *Id.* at 610; *see also Gestetner*, 108 F.R.D. at 141.

When the proposed modification is an amendment to the pleadings, the moving party may establish good cause by showing "(1) that [he or she] was diligent in assisting the court in creating a workable Rule 16 order; (2) that [his or her] noncompliance with a rule 16 deadline occurred or will occur, notwithstanding [his or her] diligent efforts to comply, because of the development of matters which could not have been reasonably foreseen or anticipated at the time of the Rule 16 scheduling conference; and (3) that [he or she] was diligent in seeking amendment of the Rule 16 order, once it became apparent that [he or she] could not comply with the order." *Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 608 (E.D. Cal. 1999)(citations omitted).

Only after the moving party has demonstrated diligence under Rule 16 does the court apply the standard under Rule 15 to determine whether the amendment was proper. *See Mammoth Recreations*, 975 F.2d at 608; *Eckert Cold Storage*, 943 F. Supp. at 1232 n.3. Pursuant to Rule 15(a), "leave [to amend] is to be freely given when justice so requires." "[L]eave to amend should

be granted unless amendment would cause prejudice to the opposing party, is sought in bad faith, is futile, or creates undue delay." *Martinez v. Newport Beach*, 125 F.3d 777, 785 (9th Cir. 1997).

It is generally our policy to "permit amendment with 'extreme liberality,' although when a district court has already granted a plaintiff leave to amend, its discretion in deciding subsequent motions to amend is 'particularly broad.'" *See Chodos v. West Publishing Co., Inc.*, 292 F.3d 942, 1003 (9th Cir. 2002) (citing *Griggs v. Pace Am. Group, Inc.*, 170 F.3d 877, 879 (9th Cir. 1999)).

## V. **DISCUSSION**

Plaintiff contends that he is entitled to file an amended complaint to comply with Rule 11's safe harbor provisions, which were triggered by Defendants' motion for sanctions.

Rule 11's safe harbor provisions give an attorney the opportunity to withdraw or correct a challenged filing by requiring a party filing a Rule 11 motion to serve the motion 21 days before filing the motion. Fed. R. Civ. P. 11(c)(1)(A). Rule 11 states that "a motion for sanctions ... shall not be filed with or presented to the court unless, within 21 days after service of the motion ... the challenged paper ... is not withdrawn or appropriately corrected." Fed. R. Civ. P. 11(c)(1)(A). The "purpose of the safe harbor ... is to give the offending party the opportunity, within 21 days after service of the motion for sanctions, to withdraw the offending pleading and thereby escape sanctions." *Retail Flooring Dealers of Am., Inc. v. Beaulieu of Am., LLC*, 339 F.3d 1146, (9th Cir. 2003).

Plaintiff asserts that because the fifth amended "seeks to

correct the allegedly violative pleading," the court is "required" to grant him leave. (Pl.'s Mot. 2:15-2:16, 3:3-3:4.) In essence, Plaintiff contends that Rule 11's safe harbor allows him unfettered access to the amendment process.  Although Rule 11 allows the non-moving party to withdraw or appropriately correct the challenged document, it does not create an unflinching mandate to file complaints unrelated to the motion for sanctions.[9]  Rather, the normal method to appropriately correct the Rule 11 violation is to "withdraw the position or to acknowledge candidly that it does not currently have evidence to support a specified allegation." *Barber v. Miller*, 146 F.3d 707, 710 (9th Cir. 1998). Plaintiff's proposed fifth amended complaint does neither.

Here, Defendants' motion for sanctions is premised on Plaintiff's recent deposition testimony that the purpose of the

---

[9] The purpose of the amendments is made abundantly clear by the Advisory Committee Notes:

> These provisions are intended to provide a type of "safe harbor" against motions under Rule 11 in that a party will not be subject to sanctions on the basis of another party's motion unless, after receiving the motion, it refused to withdraw that position or to acknowledge candidly that it does not currently have evidence to support a specified allegation. Under the former rule, parties were sometimes reluctant to abandon a questionable contention lest that be viewed as evidence of a violation of Rule 11; under the revision, the timely withdrawal of a contention will protect a party against a motion for sanctions.

Fed. R. Civ. P. 11; Adv. Comm. Notes, 1993 Amend.

Consistent with Rule 11, Plaintiff's PFAC will be analyzed pursuant to Defendants' motion for sanctions.

November 1998 contract was to defraud creditors. (Defs.' Mot. for Sanctions [Docket #112], filed April 1, 2009, at 2.) Plaintiff's proposed fifth amended complaint fails to withdraw or correct the offending material, instead introducing allegations of a July 1998 oral contract between the parties.[10] Such an expansion of the pleadings - without directly addressing the challenged conduct - is an inappropriate use of the safe harbor provisions and does not "appropriately correct" the pleading. The safe harbor provisions exist to "give the offending party the opportunity to withdraw the offending pleading and thereby escape sanctions." *Miller*, 146 F.3d at 710. It does not give the party authority to re-engineer their complaint to survive a dispositive motion. Plaintiff's recasting of Rule 11 does not provide the good cause needed to withstand Rule 16.

Plaintiff further argues that good cause exists for an amendment because the November 1998 agreement does not accurately reflect the transaction between the parties. Plaintiff now asserts that the parties reached an oral agreement on July 1, 1998, and this oral agreement is controlling. (Gilmore Decl. ¶ 4.) Plaintiff's counsel states he first realized that the November 1998 document was not a completely accurate statement of the parties' understanding following Plaintiff's deposition on February 9,

---

[10] Plaintiff contends that his allegations of an oral agreement are consistent with his prior complaints in that "Smith has always contended that the deal between the parties bound Simmons individually rather than just Clean Air." (Pl.'s Mem. of P & A, pg. 1.)

**11**

2009.[11]  (Id. ¶ 5.)  Defendants contend that Plaintiff has not demonstrated the requisite diligence under Rule 16 because he was aware of the information giving rise to this claim at least three years prior to his deposition.

The allegations in Plaintiff's first, second, third, and fourth amended complaints demonstrate that he was aware of the general underlying facts giving rise to an oral contract claim before he filed this motion.  Plaintiff admits that the "basics of the transaction are accurately stated in the November 1998 document" and previous complaints "have always set forth the correct terms of the agreement as to what was transferred and what is due."  (Smith Decl. ¶ 6, 9.)  Plaintiff's story is further belied by his own admission that he used "copies of the [July 1, 1998] handwritten agreement to show to banks in New Zealand to open accounts and obtain loans to acquire real estate."[12]  (Smith Decl. ¶ 3-4.)

The following excerpt from the November 1998 written agreement, casts additional uncertainty onto Plaintiff's claims of ignorance:[13]

---

[11] At the same time, Plaintiff contends that his allegations of an oral agreement are consistent with his prior complaints in that "Smith has always contended that the deal between the parties bound Simmons individually rather than just Clean Air."  (Pl.'s Mem. of P & A, pg. 1.)

[12] Unfortunately, Plaintiff did not retain any copies of this alleged agreement.  (Smith Decl. ¶ 4.)

[13] Plaintiff admits drafting the November 23, 1998 Agreement.  (T. Smith Dep. 62:16-62:22.)

**12**

> 1. The contract signed July 1, 1998, between Land O'Goshen, Inc., and Clean Air Products, Inc., becomes null and void, and is superceded by this Contract.
>
> 2. The contract signed July 1, 1998, between Thomas N. Smith, and Clean Air Products, Inc., becomes null and void, and is superceded by this contract.
>
> 3. This contract shall be inclusive of all assets, inventory, names, numbers, and good will of Land O'Goshen, Inc., including the aforementioned 800 telephone number, data base operating system and dba "HELP SMOG PARTS" together with the Toyota Forklift serial # 4U-3FGEZU, and 440 Feet of the 8" high pallet racks that were owned by Thomas N. Smith as of July 1, 1998, for the sum of $430,000.

(See Exhibit 1, attached to FAC, SAC, TAC, and 4thAC.)

Accordingly, Plaintiff had notice of potential claims relating to the alleged oral contract reached on July 1, 1998 prior to the filing of the lawsuit. At the very least, Plaintiff had notice of the general underlying facts at the time he filed his fourth amended complaint on April 3, 2008.[14] Now, one year later and after discovery has closed, Plaintiff seeks to amend his complaint to introduce allegations stemming from an oral agreement that allegedly took place in 1998. Such delay does not constitute requisite diligence sufficient to satisfy Rule 16 good cause.

Moreover, even if Plaintiff had demonstrated good cause, the proposed amendment to the complaint would be prejudicial to

---

[14] Plaintiff has filed three amended complaints since retaining counsel in March of 2006: (1) the second amended complaint, filed on July 5, 2006; (2) third amended complaint, filed on October 3, 2007; and, (3) fourth amended complaint, filed on April 3, 2008. The November 1998 Agreement was attached to each amended complaint as "Exhibit 1."

**13**

Defendants.[15]  *See* Fed. R. Civ. Proc. 15; *Martinez*, 125 F.3d at 785 (9th Cir. 1997) ("[L]eave to amend should be granted unless amendment would cause prejudice to the opposing party, is sought in bad faith, is futile, or creates undue delay."). Factual discovery in this matter has been completed and trial is set for July 21, 2009. Defendants anticipate that if Plaintiff's motion is granted, factual discovery would have to be reopened.[16]  (Defs.' Opp'n to Pl.'s Mot. for Leave to Amend [Docket #130], filed May 21, 2009, at 4.)  This likely would cause trial to be postponed or the parties would proceed to trial with little factual discovery regarding this issue. (*Id*.)  As such, Defendants contend that the prejudice and the delay caused by discovery that would be needed to ameliorate such prejudice is not justified by Plaintiff's unexplained failure to amend his complaint until now.  This argument has merit.

Because Plaintiff has not demonstrated good cause to modify the pretrial scheduling order to allow amendment to the complaint, and because the proposed amendment would be prejudicial to Defendants, Plaintiff's motion to amend the complaint is DENIED.

---

[15] For the reasons set forth in the discussion of Plaintiff's diligence in bringing a motion to amend, Plaintiff's delay also raises concerns regarding undue delay. *See Kaplan v. Rose*, 49 F.3d 1363, 1370 (9th Cir. 1994) (holding that the district court did not abuse in denying leave to amend where the "new" facts and theories had been known to the party seeking amendment since the inception of the litigation).

[16] Reopening of discovery would modify the June 5, 2008 Scheduling Order.  If discovery is reopened, modifying the deadlines for non-dispositive and dispositive motions is inevitable.

**14**

**VI. <u>CONCLUSION</u>**.

For the foregoing reasons:

1. Plaintiff's motion for leave to file a fifth amended complaint is DENIED.

IT IS SO ORDERED.

**Dated:   June 22, 2009**                              /s/ Oliver W. Wanger
                                                                UNITED STATES DISTRICT JUDGE

15